IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DAN CHACKO, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Case No. 1:23-cv-551 (PTG/IDD) |
| | ) |
| MELISSA PRESTON, *et al.* | ) |
| | ) |
| *Defendants.* | ) |

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendants Melissa Preston, David Powell, Bernie Elero, John R. Ford, and Jennifer Tidwell's Motion to Dismiss (Dkt. 24) ("Motion") the First Amended Complaint, Dkt. 29 ("FAC"). Plaintiff Dan Chacko, who is proceeding *pro se*, filed suit alleging that Defendants (1) violated the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3901, *et seq.*; (2) violated the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*; and (3) defamed Plaintiff. Defendants contend that the FAC should be dismissed because it fails to state a claim as a matter of law. On October 19, 2023, the Court heard argument on the Motion and the matter is now fully briefed. For the reasons stated below, the Court grants Defendants' Motion (Dkt. 24).

I.  BACKGROUND

A.  **Allegations of Discrimination and Defamation**

Plaintiff alleges that he is an active servicemember who faced discrimination at the hands of Defendants as a new homeowner in Defendants' neighborhood.[1] FAC ¶¶ 8–10, at 6–7.[2]

---

[1] The facts recited here are based on the factual allegations made in Plaintiff's FAC.

[2] The page numbers cited from Plaintiff's FAC correspond to the page number as printed on the heading of the FAC, as Plaintiff did not include his own pagination. In certain portions of

1

Plaintiff alleges that Defendants—through the Waterford Heights Homeowner Association, LLC ("HOA")—discriminatorily enforced certain property restrictions against Plaintiff. *Id.* ¶¶ 9–10, at 6–7.

According to the FAC, Defendants' discriminatory conduct began when Plaintiff decided to purchase a residential property in March 2019. *Id.* ¶ 23, at 11–12. After submitting plans for fencing and a second driveway to the HOA, Plaintiff's plans were rejected. *Id.* ¶ 26, at 12. Plaintiff claims that despite being explicitly denied on aesthetic grounds, the reasons for the denial were "understood by [Plaintiff] to be discriminatory[.]" *Id.* Plaintiff alleges that other houses in the same neighborhood had a second driveway along with perimeter fencing, similar to the additions that Plaintiff sought. *Id.* ¶ 27, at 13–14. Plaintiff alleges that the denial occurred after the "immediately prior [p]resident" of the HOA had "met and seen Chacko [who is] an individual of South-Asian origin[.]" *Id.* ¶ 25, at 12. Plaintiff claims that Defendants thereafter "coerced [him] to back out of his contract to purchase the property[.]" *Id.* ¶ 31, at 14.

Plaintiff further alleges that on June 19, 2020, the HOA filed a motion for a preliminary injunction in Loudon County Circuit Court because Plaintiff had added a second driveway, a pergola, and trees to his property. *Id.* ¶ 9, at 6–7; *id.* ¶¶ 11–12, at 8–9. Plaintiff claims that as part of Defendants' legal strategy and in order to raise funds for the HOA's legal fees, Defendants had made injurious false statements about Plaintiff's intention to use his property for commercial purposes. *Id.* ¶¶ 10–11, at 7–8. Plaintiff alleges that much of this occurred while he was away on active duty, which had lasted until September 2019 and had delayed Plaintiff's ability to move into his new home. *Id.* ¶ 10, at 7.

---

Plaintiff's FAC, Plaintiff omitted paragraph numbers altogether. The Court cites to pagination alone in those instances where Plaintiff omitted paragraph numbers in his FAC.

2

### B. Procedural History

This is not the first motion to dismiss in this case. On July 6, 2023, the Court granted in part Defendants' motion to dismiss (Dkt. 11) the initial complaint. Dkt. 22.[3] As a result, the Court dismissed with prejudice several counts alleged against Defendants. *Id.* Plaintiff also withdrew two counts. *Id.* The Court granted Plaintiff leave to amend his complaint as to the three counts that Plaintiff has renewed in his instant FAC: Count 3 (violations of the SCRA), Count 10 (violations of the Fair Housing Act), and Count 11 (Defamation). *Id.*

When Defendants filed the instant Motion, they advised Plaintiff that the Motion could be granted on the basis of its papers if Plaintiff failed to file a response within twenty-one (21) days of the date the Motion was filed. Dkt. 24 at 2; *see also* Local Civil Rule 7(K) of the Eastern District of Virginia; *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Plaintiff did not file an opposition within that time. During the October 19, 2023 hearing, however, the Court granted Plaintiff leave to file an opposition out of time. Dkt. 33. On November 2, 2023, Plaintiff filed his brief in opposition. Dkts. 34, 35. On November 9, 2023, Defendants filed their reply. Dkt. 36.

During the October 19 hearing, the Court also addressed the issue that Plaintiff's FAC was filed on the Court's docket after the instant Motion. The operative FAC was filed on September 14, 2023, while the instant Motion was filed by Defendants on August 11, 2023. Dkts. 29, 24. In their Motion, Defendants state that they are responding to a copy of the FAC that they were served on July 28, 2023. Dkt. 25 at 2. In the October 19 hearing, Plaintiff claimed that he believed his service of the FAC on Defendants was sufficient for the purposes of filing. Plaintiff claimed that the version of the FAC filed on September 14, 2023 was materially similar to the version served

---

[3] At the same time, the Court granted the motion to dismiss (Dkt. 3) filed by Odin Feldman & Pittleman, a law firm. Dkt. 22.

3

on Defendants on July 28, 2023. The Court directed Defendants to file a copy of the FAC that they were served. On October 19, 2023, Defendants filed the served version of the FAC. Dkt. 31.

The Court has compared the FAC filed on September 14, 2023 with the version that was served on Defendants on July 28, 2023. There are stylistic and substantive differences between the two versions. However, the differences are not material to Defendants' arguments in the instant Motion. Therefore, the Court will consider the instant Motion as responsive to the FAC filed on September 14, 2023, Dkt. 29, and proceed with deciding the Motion accordingly.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Accordingly, a complaint is insufficient if it relies upon "naked assertions" or "unadorned conclusory allegations" devoid of "factual enhancement." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). When reviewing a 12(b)(6) motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint" and draw "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (alteration in original) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

In deciding the Motion, a court "may consider documents attached to the complaint, as

4

well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citations omitted). A court will construe papers filed by a *pro se* complainant liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## III.   ANALYSIS

### A.   Plaintiff Fails to State a Claim Under the SCRA

In Count 3, Plaintiff alleges that Defendants violated the SCRA at least three times. FAC at 35–37. Defendants argue that Plaintiff fails to plausibly allege that the SCRA applies to the claims that Plaintiff brings. Dkt. 25 at 4.

The purpose of the SCRA is "to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." 50 U.S.C. § 3902(2). Plaintiff alleges that the first SCRA violation occurred when Defendants' law firm sent Plaintiff a "threatening letter" that it would pursue litigation in court should Plaintiff fail to "execute an unachievable task of growing green grass in the middle of winter" or "to lift away his extremely heavy [p]ergola." SAC at 36.

However, Plaintiff does not identify the particular rights under the SCRA that were violated when Plaintiff received the letter. For example, the SCRA protects servicemembers from "evict[ion] . . . during a period of military service[.]" 50 U.S.C. § 3951(a)(1)(A). It also protects servicemembers who have entered a contract for real or personal property from recission or termination "for a breach of terms of the contract occurring before or during that person's military service[.]" *Id.* § 3952(a)(1)(B). The Court cannot plausibly infer or identify the SCRA violation that occurred based on the first violation as alleged by Plaintiff. Plaintiff therefore fails to plausibly allege a violation of the SCRA concerning the letter he received from Defendants' law

firm.

The second and third alleged violations of the SCRA appear to be related. The second alleged violation refers to Defendants' decision to schedule certain proceedings in state court despite Plaintiff's active-duty status. SAC at 36. The third alleged violation occurred when Defendants "set in motion" a "[s]how of [c]ause" without filing an affidavit concerning Plaintiff's active-duty status. *Id.* Plaintiff does not identify the particular provisions of the SCRA that were violated in these two scenarios. Even so, the Court notes that under the SCRA, in a civil action or proceeding "in which the defendant does not make an appearance . . . the court, before entering judgement for plaintiff, shall require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service," or, "stating that the plaintiff is unable to determine whether or not the plaintiff is in military service." 50 U.S.C. § 3931(a)–(b).

As to these two alleged SCRA violations, Plaintiff fails to claim that he did not make an appearance once the matters to which Plaintiff refers were scheduled. SAC at 36. Failure to appear is required to trigger the potentially relevant SCRA provision cited above.[5] *See* 50 U.S.C. § 3931(a) (triggering protections where "the defendant does not make an appearance"). Moreover, the SCRA requires an affidavit before a court enters judgement against an absentee defendant. 50 U.S.C. § 3931(b)(1). The relevant statutory provision does not require an affidavit at the time a party schedules a hearing. *Id.* However, Plaintiff alleges that the SCRA was violated when Defendants allegedly failed to file an affidavit at the time Defendants were seeking to schedule certain matters. SAC at 36.

More generally, Plaintiff claims that he is protected by the SCRA because Defendants were

---

[5] To the contrary, Plaintiff alleges he was present and engaged at certain state-court proceedings. *See, e.g.,* SAC ¶ 35, at 18 (claiming that a state court showed signs of bias when leading "the witness to answer a certain way when [Plaintiff] was cross-examining the witness[.]").

6

on notice that he was "put on [a]ctive [d]uty during a period of time[.]" SAC at 35. Defendants argue that Plaintiff fails to plausibly allege that he fits the statutory definition related to duty status. Dkt. 25 at 4. Under the SCRA, active duty "means full-time duty in the active military service of the United States." 10 U.S.C. § 101(d)(1); 50 U.S.C. § 3911(2) (incorporating "active duty" as defined by 10 U.S.C. § 101(d)(1) into the SCRA's definition of "military service"). Plaintiff fails to describe the nature of his duty or otherwise plausibly allege whether he was on full-time duty in service of the United States at the periods relevant to his allegations in Count 3. While Plaintiff alleges that he was "an Active National Guardsman put on [a]ctive [d]uty [until] September[] 2019," Plaintiff also claims he was present at certain state-court proceedings relevant to his SCRA allegations. SAC ¶ 10, at 7; *id.* ¶ 35, at 18. Plaintiff even refers to himself as a "veteran" within his recitation of the first alleged SCRA violation. SAC at 36. Thus, the Court cannot plausibly infer that Plaintiff qualified for the protections of the SCRA as an active-duty servicemember at the periods of time relevant to his allegations.

This Court is not bound to accept as true any conclusory arguments or legal assertions made by Plaintiff in his FAC. *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000) ("we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"). Plaintiff may claim that Defendants violated the SCRA "multiple times," but making such claims without alleging plausible facts to substantiate such a claim is insufficient. FAC at 35. Accordingly, this Court dismisses Count 3.

### B.   Plaintiff Fails to State a Claim Under the Fair Housing Act

Count 10 alleges that Defendants violated the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, by denying Plaintiff's proposed plans for a fence and a second driveway "after recognizing he was of South-Asian origin[.]" FAC at 49. Plaintiff also alleges that he was treated differently because

7

there was evidence that there were pergolas on at least three other properties in the neighborhood and that "other individuals of White race were allowed perimeter and front yard fencing and driveways with two entrances or two access points[.]" FAC at 52. Defendants argue that Plaintiff's allegations fail to plausibly allege that their conduct was the result of bias or prejudice. Dkt. 25 at 6.

Under the Fair Housing Act, it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). To survive a motion to dismiss, a "plaintiff asserting a claim of housing discrimination must allege facts that '[he] is a member of a protected class and that [he] was treated differently than other tenants because of [his] membership in that class.'" *Richardson v. Bell Partners, Inc.*, 2018 WL 10418861, at *3 (E.D. Va. Feb. 16, 2018) (quoting *Roberson v. Graziano*, 2010 WL 2106466, at *2 (D. Md. May 21, 2010)), *aff'd* 724 F. App'x 240 (4th Cir. 2018). Under a theory of disparate treatment, a plaintiff will eventually have to "establish that the defendant had a discriminatory intent or motive[.]" *Reyes v. Waples Mobile Home Park Ltd.*, 903 F.3d 415, 421 (4th Cir. 2018) (quoting *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015)). At this stage, this means that a plaintiff needs "to allege facts at least supporting an inference that discriminatory animus was a motivating factor." *CASA de Maryland, Inc. v. Arbor Realty Tr., Inc.*, 2022 WL 4080320, at *10 (D. Md. Sept. 6, 2022). Plausible factual allegations of discriminatory intent may be direct or circumstantial. *Corey v. Sec'y, U.S. Dep't of Hous. & Urb. Dev. ex rel. Walker*, 719 F.3d 322, 325 (4th Cir. 2013).

In this case, Plaintiff clearly alleges that he is of South-Asian origin and therefore a member of a protected class. SAC at 49. To plausibly allege that he was treated differently than other

8

residents because of his identity and thereby state a claim of discrimination, Plaintiff may refer to comparators in order to plausibly allege discriminatory intent sufficient to state a disparate-treatment claim. *Wright v. Nat'l Archives & Recs. Serv.*, 609 F.2d 702, 713 (4th Cir. 1979) (recognizing that discriminatory motive may be inferred from plausible allegations of difference in treatment). While Plaintiff does allege that he was treated differently than neighbors who had perimeter fencing and driveways with multiple access points, such allegations fall short of the kind needed to plausibly infer discrimination. FAC 51–52. That is because Plaintiff must plausibly allege that his neighbors' properties were similarly situated. *See, e.g., CASA de Maryland, Inc.*, 2022 WL 4080320, at *10 (finding that a Fair Housing Act disparate-treatment claim failed because plaintiffs did not allege enough details to show that comparator properties were similarly situated). Plaintiff fails to allege enough factual detail that could plausibly show that his property was similarly situated as the properties owned by his neighbors who were treated differently.

A court cannot allow for "speculation" to "fill the gaps in [the] complaint." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015).[6] Offering facts of discriminatory conduct that are "*consistent* with discrimination . . . does not alone support a *reasonable inference* that the decisionmakers were motivated by bias." *Id.* (emphasis in original). Thus, Plaintiff may not rest alone on speculative allegations like Defendants "recogniz[ed] [Plaintiff] was of South-Asian origin and not White[.]" FAC at 49. Such statements do not provide sufficient factual detail to plausibly allege that Plaintiff's race motivated Defendants' allegedly discriminatory conduct. As discussed above, Plaintiff's argument that his

---

[6] Though *McCleary-Evans* concerns employment discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1), claims of housing discrimination brought under the Fair Housing Act may be evaluated under the same burden-shifting framework as Title VII claims. *Corey*, 719 F.3d at 325 (recognizing that the *McDonnell Douglas* framework may be used to evaluate allegations of discriminatory intent in Fair Housing Act claims).

neighbors were treated differently is insufficient—as pleaded—to support Plaintiff's argument that bias motivated Defendants' conduct. Plaintiff does not allege facts apart from this insufficient claim to support his theory of disparate treatment. For these reasons, the Court will dismiss Count 10 for Plaintiff's failure to state a claim of housing discrimination.

### C.  Plaintiff Fails to State a Defamation Claim (Count 11)

Count 11 alleges that Plaintiff was the victim of a "defamatory sentiment." FAC at 58. Defendant argues that Plaintiff's FAC is devoid of the defamatory statements that support his claim. Dkt. 25 at 7. The Court agrees.

In Virginia, a plaintiff alleging defamation must plead (1) publication of (2) a false and defamatory statement with (3) the requisite intent.[7] *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013). Plaintiff must allege the "exact words charged to have been used by [the] defendant[.]" *Fed. Land Bank of Baltimore v. Birchfield*, 3 S.E.2d 405, 410 (Va. 1939) (recognizing that a petition was insufficient because it did not purport to contain the exact words alleged to be defamatory, "which is necessary to correctly state a good cause of action for libel, slander or insulting words"). When a plaintiff fails to identify an actionable statement, his defamation claim must be dismissed as a matter of law. *See, e.g., McGuire v. IBM Corp.*, 2011 WL 4007682, at *5 (E.D. Va. Sept. 8, 2011) (dismissing a claim of defamation analyzed under Virginia law where plaintiff "neither quotes nor even paraphrases the[] alleged defamatory statements").

In this case, Plaintiff alleges that Defendants defamed Plaintiff when they falsely claimed

---

[7] Where a federal court is considering a state-law claim under its supplemental jurisdiction, the court looks to the choice-of-law rules in its forum state. *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983), *on reh'g*, 742 F.2d 170 (4th Cir. 1984). In Virginia, courts apply the rule of *lex loci delicti*, or the place of the wrong, to determine the proper substantive law to apply to a state claim. *Jones v. R.S. Jones & Assocs., Inc.*, 246 Va. 3, 5 (1993). Here, Plaintiff alleges that the defamation allegedly occurred in Virginia. FAC at 58. Therefore, Virginia state law applies to Plaintiff's defamation claim.

in their state-court filings that Plaintiff purchased his property for commercial purposes and used such claims to raise funds for their legal fees. FAC at 57–58. Plaintiff recites five questions or statements he alleges to have been directed at him at a "gathering," but specifically states that these questions arose *after* the allegedly defamatory statements made by Defendants. FAC at 58. The FAC suffers from the same defects as the initial complaint. Plaintiff still fails to identify the exact words that were allegedly defamatory, which is required to plausibly allege a claim of defamation. *Fed. Land Bank of Baltimore*, 3 S.E.2d at 410. Therefore, this Court must dismiss Count 11 for Plaintiff's failure to state a claim.

### D.  Granting Leave to Amend Would Be Futile

Plaintiff has now been given two opportunities to plausibly allege claims that may proceed in this Court. Federal Rule of Civil Procedure 15(a)(2) states that a "court should freely give leave when justice so requires." However, "[i]n the Eastern District of Virginia, an amendment may be considered futile where Plaintiffs have previously had two full opportunities to plead their claim." *Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 595 (E.D. Va. 2006) (citing *Travelers Cas. & Sur. Co. v. Danai*, No. Civ. A. 05-356, 2005 WL 2045398, at *3 (E.D. Va. Aug. 22, 2005)). When a court has confirmed that all the facts are before it and a court is satisfied that it is familiar with the entirety of the circumstances surrounding a plaintiff's demands, a court may refuse to grant leave to amend due to futility. *Morefield v. Bailey*, 959 F. Supp. 2d 887, 907 (E.D. Va. 2013) (finding futility after confirming during oral argument that there were no additional facts related to the insufficient amended complaint before the court).

At the October 19, 2023 hearing on the instant Motion, the Court specifically asked the Plaintiff whether all the facts relevant to his claims were before the Court. Plaintiff confirmed that they were. Here, Plaintiff has twice failed to plausibly allege facts sufficient to support his claims.

Given Plaintiff's confirmation, the Court is satisfied that there are not relevant facts through which Plaintiff could plausibly state a claim for relief. There is no reason to believe that granting Plaintiff a third opportunity to amend would cure the deficiencies. Therefore, the Court dismisses Counts 3, 10, and 11 of Plaintiff's FAC with prejudice as further amendment would be futile. Accordingly, it is hereby

**ORDERED** that Defendants' Motion (Dkt. 24) is **GRANTED**; and it is further

**ORDERED** that Count 3 (violations of the SCRA), Count 10 (violations of the Fair Housing Act), and Count 11 (Defamation) of Plaintiff's First Amended Complaint (Dkt. 29) are **DISMISSED with prejudice.**

The Clerk is **DIRECTED** to mail a copy of this Order to Plaintiff, who is proceeding *pro se*, and to close this matter.

This is a final order for the purposes of appeal. To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of the Court within thirty (30) days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

Entered this 5th day of March, 2024.  
Alexandria, Virginia

/s/  
Patricia Tolliver Giles  
United States District Judge